IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VALERY R. Y., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-00392-SH |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Valery R. Y. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, an individual is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the

steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff protectively applied for Title XVI supplemental security income benefits in October 2018. (R. 306-19.) Plaintiff alleges that she has been unable to work since July 1, 2018, due to anxiety, panic attacks, bipolar disorder, major depressive disorder, attention deficit disorder, obsessive compulsive disorder, posttraumatic stress disorder ("PTSD"), stress, thyroid problems, and migraines. (R. 306, 311, 354.) Plaintiff was 61 years old on the date of the ALJ's decision. (R. 42, 306, 311.) She has a high school education and no past relevant work. (R. 82, 351.)

Plaintiff's claims for benefits were denied initially and on reconsideration, and she requested a hearing regarding her Title XVI claim. (R. 129-87, 202-04.) ALJ Laura Roberts conducted an administrative hearing and issued a decision on April 1, 2021, finding Plaintiff not disabled. (R. 27-42, 49-85.) The Appeals Council denied review on July 16, 2021 (R. 13-18), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff appeals.

## III. The ALJ's Decision

In her decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her application date of October 30, 2018. (R. 30.) At step two, the ALJ found Plaintiff had the severe impairments of bipolar disorder, major depressive disorder, generalized anxiety disorder, panic disorder, agoraphobia, and PTSD. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 32-33.)

The ALJ then determined Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant is able to understand, remember, and carry out simple tasks with simple instructions in a routine work setting (Specific Vocational Preparation 1-2). The claimant can occasionally interact with co-workers and supervisors. The claimant is unable to interact with the general public (contact is ok). The claimant is incapable of tandem or teamwork. The claimant is capable of occasional changes in work processes.

(R. 34.) The ALJ provided a summary of the evidence that went into this finding. (R. 34-41.)

At step four, the ALJ found Plaintiff had no past relevant work to analyze (R. 41), so she proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform occupations existing in significant numbers in the national economy, including laundry worker I, hand packager, and bench assembler. (R. 41-42.) The ALJ thus found Plaintiff was not disabled. (R. 42.)

## IV. Issues

Plaintiff asserts the ALJ erred by failing to properly evaluate the medical source opinions of her treating psychiatrist Dr. Charles Van Tuyl and consultative examiner Dr. Melinda Shaver.

## V. Analysis

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in four categories of abilities. *Id*. § 416.913(a)(2)(i). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering;

4

maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." *Id.* If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict an opinion or finding. *Id.* § 416.920c(a) & (c). Supportability and consistency are the most important factors, and the ALJ must always explain how she considered those factors in the decision.[1] *Id.* § 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors, *id.*, unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical, *id.* § 416.920c(b)(3).

### A. Dr. Van Tuyl's Medical Source Statement

Dr. Van Tuyl, along with other providers at Counseling & Recovery Services of Oklahoma, regularly treated Plaintiff for obsessive-compulsive disorder, generalized

---

[1] Supportability refers to relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency between a medical opinion "with the evidence from other medical sources and nonmedical sources" in the record. *Id.* § 416.920c(c)(2).

5

anxiety disorder, and bipolar I disorder between August 2016 and February 2020.[2] (R. 500-671, 677-849, 869-877, 1071-1164.) Plaintiff's symptoms waxed and waned at these appointments, and the mental status examinations were normal as to Plaintiff's thought process, judgment, insight, memory, attention span, and concentration. (*Id.*) Although providers identified no issues with Plaintiff's mood or affect at most of these appointments, there were instances where Plaintiff's mood was depressed, anxious, or labile and her affect was flat. (R. 501, 504, 507, 510, 690-91, 711-12, 805, 870, 873, 1020-21, 1034-35, 1049, 1079, 1087, 1095.)

On May 4, 2020, Dr. Van Tuyl completed a form titled "Medical Source Statement – Mental." (R. 1166-67.) The form asked for an opinion on the degree of Plaintiff's limitations in 20 mental functional areas – either mild, moderate, marked, or extreme—resulting from Plaintiff's mental impairments.[3] Dr. Van Tuyl checked boxes indicating Plaintiff had a "marked" limitation in 14 of the functional areas he assessed, including her ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; and accept instructions and respond appropriately to criticism from supervisors. (*Id.*) Dr. Van Tuyl indicated Plaintiff had

---

[2] Dr. Van Tuyl treated Plaintiff from August 2016 through June 2017, and from January 2019 through February 2020. (R. 500-21, 802-49, 869-77, 1076-1164.) Dr. Heather Campbell treated Plaintiff from July 2017 through May 2018, and from November 2018 through January 2019. (R. 534-641, 730-801). Nurse practitioners Bruce Piexotto or Frankie Whatley treated Plaintiff from July 2018 through October 2018. (R. 642-61, 677-729.)

[3] The form defines "moderately limited" as "[i]mpairment levels are compatible with some, but not all useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (R. 1166.) "Markedly limited" is defined as "[m]ore than [m]oderate, but less than extreme resulting in limitations that seriously interferes with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." (*Id.*) "Extremely limited" is defined as "[i]mpairment level preclude useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." (*Id.*) The form does not define "mildly limited," nor does it provide an option for "not limited."

an "extreme" limitation in the six remaining functional areas he assessed, including her ability to interact with the general public and respond appropriately to changes in the work setting. (*Id.*)  Dr. Van Tuyl further indicated Plaintiff would be off task 25 percent or more of the workday. (R. 1166.)  He noted on the form that Plaintiff decompensates with "minimal stress" and has difficulty concentrating "even on meds." (*Id.*)

In her written opinion, the ALJ painstakingly recounted Dr. Van Tuyl's treatment notes from the relevant period. (R. 36-39.)  The ALJ then summarized Dr. Van Tuyl's May 2020 medical source statement and concluded it was unpersuasive. (R. 40.)  In discussing the consistency and supportability of Dr. Van Tuyl's opinion, the ALJ found his opinion was not supported by his own normal mental status examination of Plaintiff on January 14, 2020, and was inconsistent with the normal mental status examination performed by consultative examiner Dr. Ashlin Paz on May 4, 2019.[4] (*Id.*)

Plaintiff contends the ALJ's conclusion regarding Dr. Van Tuyl's opinion is not supported by substantial evidence, because she ignored the record as a whole—which Plaintiff describes as demonstrating "consistent abnormalities and reports to her providers of significant mental functional limitations." (ECF No. 15 at 11.)  As support, Plaintiff points to various notations from Dr. Van Tuyl's January 2020 examination, May 2020 medical source statement, and treatment notes throughout the relevant period; Dr. Paz's May 2019 consultative examination; Dr. Shaver's July 2019 consultative examination; her own function report; and the third-party function report. (*Id.* at 11-14.)

---

[4] The ALJ summarized Dr. Paz's May 2019 consultative examination in her decision. (R. 37.)

It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to her position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). However, the ALJ is not required to discuss in detail each piece of evidence in the record. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Plaintiff acknowledges the ALJ considered Dr. Van Tuyl's treatment notes, Dr. Paz's consultative examination, and Dr. Shaver's consultative examination, and does not challenge the ALJ's findings regarding Plaintiff's symptoms. Nonetheless, Plaintiff argues, without pointing to any evidence the ALJ overlooked, that this same evidence supports her allegations. In so doing, Plaintiff asks the Court to reweigh the evidence to her benefit, which is improper. *See Smith v. Colvin,* 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's."). Although the ALJ could have been more thorough in analyzing Dr. Van Tuyl's opinion by specifically referencing additional mental status examinations which were also within normal limits, the Court finds the ALJ's explanation was sufficient for the court to follow her reasoning in light of her extensive discussion of the evidence elsewhere in her decision. *See Oceguera v. Colvin,* 658 F. App'x 370, 374 (10th Cir. 2016) (unpublished) (affirming ALJ's evaluation of medical opinion where court could ascertain the weight accorded the opinion and the reasons for the weight given).[5] In other words, "the court is not required to speculate as to what specific evidence lead the ALJ to h[er] conclusion

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A)

because that information is clearly contained in the ALJ's discussion of the evidence." *Bussell v. Astrue,* No. 10-CV-509-FHM, 2011 WL 2441908, at *3 (N.D. Okla. June 14, 2011).

### B.   Dr. Shaver's Consultative Examination

On July 31, 2019, Dr. Melinda Shaver performed a consultative mental status examination of Plaintiff. (R. 1056-58.) Dr. Shaver observed that Plaintiff's mood appeared euthymic, and her affect was happy. (R. 1056.) Under the heading "History of Present Illness," Dr. Shaver made notations regarding Plaintiff's employment history, mental health treatment, social functioning, and ability to complete tasks timely and appropriately, stating "[i]t appears [Plaintiff] is able to complete very few tasks in a timely and appropriate manner." (R. 1056-57.) On examination, Dr. Shaver found Plaintiff's speech was coherent and tangential; her thought process was slow, unfocused, and confused at times; her sensorium was clear; her remote memory, recent memory, and insight were fair; and her judgement was poor. (R. 1057-58.) Dr. Shaver diagnosed Plaintiff with, *inter alia,* PTSD and bipolar I disorder. (R. 1058.) Dr. Shaver opined that Plaintiff was "not emotionally capable of employment." *Id.*

In her written opinion, the ALJ summarized Dr. Shaver's consultative examination as part of the RFC discussion. Although not required to do so, the ALJ explained that Dr. Shaver's statement regarding Plaintiff's inability to work was not a medical opinion, but rather a dispositive finding on an issue reserved to the Commissioner. (R. 40.) *See* 20 C.F.R. § 416.920b(c)(3)(i) (indicating statements from a medical source on issues that are "reserved to the Commissioner," such as statements that a claimant is disabled or unable to work, are "inherently neither valuable nor persuasive" and stating the ALJ is not required to provide "any analysis about how [she]

9

considered such evidence . . . ."). The ALJ did not analyze or otherwise discuss Dr. Shaver's notation regarding Plaintiff's task completion in her decision.

Plaintiff, however, interprets Dr. Shaver's task-completion notation as a medical opinion and argues the ALJ erred by failing to analyze the persuasiveness of such opinion pursuant to 20 C.F.R. § 416.920c. The Court does not find this notation to be a medical opinion. As noted above, a medical opinion is "a statement from a medical source" about what a claimant can still do despite her impairment(s) and whether she has impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). Here, the complained-of notation merely relayed Plaintiff's pre-examination subjective complaints; it did not state limitations resulting from Dr. Shaver's examination. (R. 1056-57.) As such, this notation was not a statement from a medical source and does not constitute a medical opinion under the meaning of the regulations.[6] *See* 20 C.F.R. § 416.902(i) (a "medical source" is a person "who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal Law"). Accordingly, the ALJ was not required to consider and evaluate the noted limitation pursuant to 20 C.F.R. § 416.920c(a)-(c). *See Norris v. Barnhart,* 197 F. App'x 771, 774 n.4 (10th Cir. 2006) (unpublished) (the ALJ is not required to address, as a medical opinion, claimant's "self-reported history of chronic back pain made worse by bending and stooping"); *see also* 20 C.F.R. § 416.920c(d) (the ALJ "is not required to articulate how [she] considered evidence from nonmedical sources using the requirements in [§ 416.920c(a)-(c)]"). In any event, in assessing the RFC, the ALJ explained that the RFC limitation of understanding, remembering, and <u>carrying out simple tasks</u> was

---

[6] Instead, this notation reflected Plaintiff's "own description of [her] physical or mental impairment," so its contents are more appropriately classified as her "symptoms." 20 C.F.R. § 416.902(n).

supported by Dr. Van Tuyl's January 2019 mental status examination showing her thought process was organized/coherent, her judgment was good, and her memory, attention span, and concentration were adequate. (R. 39.) Plaintiff fails to explain how the RFC insufficiently accommodated her difficulty with task completion.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 30th day of March, 2023.

                                        SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
                                        UNITED STATES DISTRICT COURT